IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DONALD HUERTA, et al.,

    Plaintiffs,

vs.                                                                         No. CIV 01-968 RLP/DJS

CITY OF SANTA FE, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Donald Huerta, who is blind, was maced during a confrontation with City of Santa Fe Police officers. He has sued the City of Santa Fe, its police department, police chief and individual police officers, alleging violation of his First, Fourth and Fourteenth Amendment Rights (Counts I and II), and violation of Title II of the Americans with Disabilities Act[1] (Count III). The matter before the court is Defendants' Motion to Dismiss Plaintiff's Claims under the Americans with Disabilities Act for failure to state a claim upon which relief can be granted. (Docket No. 30). The court, having read the motion, the memoranda in support of and in opposition thereto and otherwise being fully advised, finds that the motion should be denied.

---

[1] Title II of the ADA does not apply to defendants in their individual capacities. See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8. (8th Cir.1999) (en banc ), cert. granted in part, 528 U.S. 1146, 120 S.Ct. 1003 (2000), cert. dismissed, 529 U.S. 1001, 120 S.Ct. 1265 (2000). Montez v. Romer, 32 F.Supp.2d 1235, 1241 (D.Colo.1999) ("I conclude that the individual defendants in their individual capacities are not properly subject to suit under the [ADA]"); Lewis v. N.M. Dep't of Health, 94 F.Supp. 2d 1217, 1230 (D. N.M. 2000) (The ADA definition of "public entity" does not include individuals and therefore most courts have held that Title II claims cannot be maintained against individual defendants.); Yeskey v. Commonwealth of Penn., 76 F.Supp.2d 572, 574-75 (M.D.Pa.1999) ("individuals are not liable under Title II because it prohibits discrimination in programs of a 'public entity' or discrimination 'by any such entity' and 'public entity' is not defined ... to include individuals") (citations omitted); Thomas v. Nakatani, 128 F.Supp. 2d 684 (D. Hi. 2000).

## The Motion to Dismiss Standard

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U. S. 41, 45-46 (1957). In deciding a motion to dismiss, the court presumes that all of the plaintiff's factual allegations are true and draws all reasonable inferences in the plaintiffs favor. See Breidenbach v. Bolish, 126 F. 3d 1288, 1293 (10th Cir. 1997). It is not this court's function to weigh potential evidence that the parties might present at trial, but to assess whether the Plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. Miller v. Glanz, 948 F. 2d 1562, 1565 (10th Cir. 1991). Rather, the issue in reviewing the sufficiency of a complaint is not whether Plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. Scheuer v. Rhodes, 416 U. S. 232, 236 (1974).

## Plaintiff's Allegations

September 9, 1999, was the night of the burning of Zozobra at Fort Marcy Park in Santa Fe, an event attended by approximately 30,000 people. At the conclusion of the event, thousands of people left the park on foot, a large portion of which were directed by law enforcement officers to walk down Washington Avenue towards the Santa Fe Plaza, which had been closed to vehicular traffic.

Plaintiff was a member of a group of approximately 450 men, women and children who were stationed at and around the intersection of Washington Avenue and Federal Place, where they were publicly stating their beliefs, theology and social positions to passersby. Most of the members of Plaintiff's group left the area after the crowd coming from the park had passed and was thinning out.

-2-

Plaintiff was one of approximately sixty members who remained to pick up papers and clean the area preparatory to leaving. At that point defendant police officers approached and ordered them to immediately disperse. Members of the group then dismantled and crated their public address system. They were told by defendant police officers that three individuals, including Plaintiff, could remain until a vehicle could be brought in to haul the equipment away. The defendant police officers were aware that Plaintiff was blind, and that other group members were to provide him transportation. Plaintiff and members of his group were peacefully assembled, were not obstructing pedestrian traffic, did not threaten violence, committed no assaults on police officers and did not pose any immediate threat to the safety of police officers or others.

One of Plaintiff's companions, co-plaintiff Carlos Rivera, stated "Jesus loves you," to one of the defendant police officers, who then sprayed mace into the eyes of Rivera and another group member. Plaintiff spoke out saying that the police were violating civil rights, religious rights and freedom of speech. The police officer immediately sprayed mace into Plaintiff's eyes, causing injuries. Additional group members were sprayed with mace. Prior to the use of mace, no attempted arrests were made. The use of mace was not for the purpose of aiding in the arrest of group members.

In his Amended Complaint (Docket No. 2), Plaintiff alleged that the Defendants used excessive and unreasonable force upon him in violation of Title II of the Americans with Disabilities Act by using force and mace prior to removing him from the crowd or otherwise protecting him. In his Response brief, Plaintiff additionally argues that he was wrongfully arrested because the defendant police officers misperceived the effects of his blindness as the criminal activity of refusal to disperse, leading to his being maced. (Docket No. 32, p. 5-6).

Discussion

Title II of the Americans with Disabilities Act, 42 U.S.C. §12132, provides that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." For the purpose of this motion, Defendants do not dispute Plaintiff's status as a qualified individual with a disability, or their status as a public entity. (Docket No. 31, p. 3).

Federal courts have utilized two separate theories in analyzing claims involving arrests brought under Title II of the ADA, wrongful arrest and reasonable-accommodation-during-arrest. Gohier v. Enright, 186 F.3d 1216, 1211 (10th Cir. 1999). The Tenth Circuit in Gohier, held that no broad rule categorically excluded arrests from the scope of Title II, but declined to adopt either theory, finding that the wrongful arrest theory did not apply to the facts of the case, and that the reasonable-accommodation-during-arrest theory had not been pled. Id. at 1221. Gohier also clarified that the term "arrest" is to be broadly construed, and includes "arrests, investigations potentially involving an arrest, and violent confrontations not technically involving an arrest." Id., at 1220, note 2.

A.   Wrongful arrest

To state a claim for wrongful arrest under the ADA, a plaintiff must allege that he was wrongfully arrested by the police because the police misperceived the effects of his disability as criminal activity. Gohier Id. at 1220. Stated another way, a plaintiff must allege that he "was arrested because his disability caused behavior that the police mistakenly confused with illegal activity." Patrice v. Murphy, 42 F. Supp. 2d 1156, 1160 (W.D. Wash. 1999); see also, Lewis v.

Truitt, 960 F. Supp. 175 (S.D. Ind. 1997) (Police, having been told man was deaf, beat and arrested him for resisting law enforcement, when his conduct stemmed from an inability to understand their commands) and Jackson v. Inhabitants of Town of Stanford, 1994 WL 589617 (D. Me. Sept. 23, 1994) (Police arrested sober man for drunk driving, based on unsteadiness and slurred speech which he had explained were the result of the prior stroke). Because of the broad definition of arrest adopted in Gohier, this theory would include violent confrontation between the police and a disabled person.

Plaintiff argues that "as a group member (he) was ordered to disperse, and was maced because he did not disperse" and that his "'refusal' to disperse was due to his disability, and was misperceived as criminal activity." (Docket No. 32, pp 5-6). The facts pled by Plaintiff do not support this argument. Plaintiff specifically alleges that the police gave him permission to remain in the area, that they were aware of the nature of his disability, blindness, and were further aware that he relied on other individuals for transportation. (Docket No. 2, ¶ 29). He further specifically alleges that he was maced not because he refused to leave the area, but because of statements he made to the police. (Docket No. 2, ¶ 33). Under these facts, the police did not "misperceive" or mistake the effects of his blindness for any activity, legal or otherwise. They reacted to his words, not to any conduct related to his blindness. Accordingly, a claim is not available under Title II for wrongful arrest under circumstances such as presented here.

B.   Reasonable-Accommodation-During-Arrest.

The reasonable-accommodation-during-arrest theory is based on a claim that in the course of properly investigating and arresting a person with a disability for a crime unrelated to that disability, police failed to reasonably accommodate the person's disability, causing the person to suffer

-5-

greater injury or indignity in that process than other arrestees. Gohier v. Enright, 186 F.3d at 1220-1221. Plaintiff contends that the police should have reasonably accommodated his blindness by removing him from the crowd before spraying mace on individuals not given permission to stay (Docket No. 2, ¶¶ 76-78; Docket No. 32, p. 6) and that Defendants City, Police Department and Police Chief "failed to train police officers to recognize disturbances likely to involve persons with disability and to arrest or use force on such persons in a manner reasonably accommodating their disability." (Id. ¶79). This latter claim quotes *verbatim* the reasonable accommodation theory the court in Gohier, though not recognizing, suggested could have been raised. Gohier v. Enright 186 F.3d at1222.

The reasonable-accommodation-during-arrest cases previously decided have involved communication with the hearing impaired, transportation of the wheel-chair bound and confrontation with the mentally ill.[2] In this case, there is no issue involving communication or post-arrest transportation. The issue framed by the facts as pled is whether police in a field situation, confronting a peaceful group, violate the ADA by not protecting a disabled individual from exposure to mace

---

[2] Hainze v. Richards, 207 F.3d 795 (5th Cir. 2000) (No cause of action stated under ADA by mentally ill plaintiff walking toward police with knife, who was shot when he failed to comply with orders to stop). Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998) (Wheelchair-bound paraplegic arrested for trespass stated cause of action under ADA for injuries received during transport from scene to station house in a van lacking wheelchair restraints); Rosen v. Montgomery County Maryland, 121 F.3d 154 (4th Cir. 1997) (Hearing-impaired individual stopped for erratic driving and arrested after failing field sobriety test did not state cause of action under ADA for failure of police to have and use auxiliary aids and services in the field. Court in dicta stated that even if such aids were required at some point, it would not be before arrival at the station house); Patrice v. Rosen, 43 F.2d 1156 ( W.D. Wa. 1999) (Hearing impaired individual arrested for domestic violence did not state cause of action under ADA for failure of police to provide qualified interpreter, where adequate accommodation provided though use of written materials and use of her daughter as interpreter); McCray v. City of Dothan, 169 F.Supp. 2d 1260 (M.D. Ala. 2001)(Hearing impaired plaintiff with limited ability to understand English being questioned in a private property damage dispute, who posed no threat to human safety, stated cause of action under ADA where police refused to contact an interpreter before or after arrest.).

used for crowd control.

The ADA is not implicated where police face on-the-street incidents involving the need to secure a scene and ensure there is no threat to human life. Hainze v. Richards, 207 F.3d 795, 801 (5th Cir. 2000). Plaintiff, however, alleges that there were no exigent circumstances requiring immediate removal of his group or pedestrians from the area, that his group was peacefully assembled, was not threatening violence, had committed no assaults on police officers, and there was no immediate threat to the safety of officers or others. (Docket No. 2, ¶¶27, 31). Assuming these facts to be true, Defendants may have been under a duty to accommodate Plaintiff's disability in handling the situation presented. The extent and reasonableness of the accommodation involves a fact-specific, case by case inquiry. McCray v. City of Dothan, 169 F.Supp.2d 1260, 1274 (M.D. Ala. 2001).

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Count III for Failure to State a Claim upon which relief can be granted is denied.

_____
Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

For Plaintiff:    Eric Sirotkin, J.D.
                Aaron Bartels, J.D.
For Defendant:  James P. Sullivan, J.D.